JUDGE SCHEINDLIN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**14 CV 0901**

-------------------------------------------------------X

E.M.M., an infant under the age of 14 years, by her
guardian and natural born mother, DANITZA
MATTHEWS and by her guardian and natural born father
MARK MATTHEWS,

Civ. No. _____

**COMPLAINT**

#2.

**Jury Trial Demanded**

Plaintiff(s),

-against-

TOYS "R" US, INC. d/b/a TOYS "R" US, TOYS "R"
US-DELAWARE, INC. d/b/a TOYS "R" US and
LEVATOY LLC,

Defendant(s).

-------------------------------------------------------X

FILED
U.S. DISTRICT COURT
S.D. OF N.Y.
2014 FEB 11 PH 2:51

Plaintiff, by her attorneys, SARETSKY KATZ DRANOFF & GLASS, L.L.P., as and for her Complaint, alleges:

## NATURE OF ACTION

1.  This is an action for money damages arising from grievous injuries sustained by E.M.M. a fourteen month old baby ("Plaintiff") when a protruding metal rod on a toy stroller sold, manufactured and/or distributed by Defendants impaled and pierced Plaintiff's right eye, causing permanent blindness, deformity and the necessity of a prosthetic device.

## JURISDICTION AND VENUE

2.  The Court has jurisdiction over Plaintiff's claims under 28 U.S.C. §1332(a) because the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs and is between citizens of different states.

3.  Pursuant to 28 U.S.C. §1391(b)(1) the United States District Court for the

Southern District of New York may preside over this case because Defendant LEVATOY LLC resides in this District and the remaining defendants are residents of New York as each such defendant is subject to the Court's personal jurisdiction with respect to the civil action in question.

## PARTIES

4. Plaintiff, E.M.M., is an infant under the age of 14 years.

5. Plaintiff Danitza Matthews is the natural mother and guardian of Plaintiff.

6. Plaintiff Mark Matthews is the natural father and guardian of Plaintiff.

7. Plaintiff, Danitza Matthews and Mark Matthews are citizens of Florida, domiciled at 8910 S.W. 156th Street, Miami, FL 33157.

8. Upon information and belief, at all times mentioned herein, Defendant Toys "R" US-Delaware, Inc. is a Delaware Corporation with its principal place of business at One Geoffrey Way, Wayne, New Jersey.

9. Upon information and belief, at all times mentioned herein, Defendant Toys "R" US-Delaware, Inc. is a foreign corporation authorized to do business in the State of New York.

10. Upon information and belief, at all times mentioned herein, Defendant Toys "R" US- Delaware, Inc. conducted business in the State of New York as Toys "R" US.

11. Upon information and belief, at all times mentioned herein, Defendant Toys "R" US-Delaware, Inc. designated Corporation Service Company, 80 State Street, Albany, New York 12201-2543 as its registered agent.

12. Upon information and belief, at all times mentioned herein, Defendant Toys "R" US-Delaware, Inc. was and still is a "citizen" of the State of Delaware.

13. Upon information and belief, at all times mentioned herein, Defendant Toys "R"

2

US-Delaware, Inc. was and still is a "citizen" of the State of New Jersey.

14. Upon information and belief, at all times mentioned herein, Defendant Toys "R" US-Delaware, Inc. is not a "citizen" of the State of New York.

15. Upon information and belief, at all times mentioned herein, Defendant Toys "R" US, Inc. is a Delaware Corporation with its principal place of business at One Geoffrey Way, Wayne, New Jersey.

16. Upon information and belief, at all times mentioned herein, Defendant Toys "R" US, Inc. conducted business in the State of New York as Toys "R" US.

17. Upon information and belief, at all times mentioned herein, Defendant Toys "R" US, Inc. is a "citizen" of the State of Delaware.

18. Upon information and belief, at all times mentioned herein, Defendant Toys "R" US, Inc. was and still is a "citizen" of the State of New Jersey.

19. Upon information and belief, at all times mentioned herein, Defendant Toys "R" US, Inc. is not a "citizen" of the State of New York.

20. Defendant LEVATOY, L.L.C. is an active New York domestic limited liability company (DOS Id# 1985726) with New York County designated as its principal place of business as set forth in the January 10, 2014. New York Department of State record at:

> http://appext20.dos.ny.gov/corp_public/CORPSEARCH.ENTITY_INFOR
> MATION?p_nameid=2044835&p_corpid=1985726&p_entity_name=%4C
> %45%56%41%54%4F%59&p_name_type=%41&p_search_type=%42%45
> %47%49%4E%53&p_srch_results_page=0

21. Upon information and belief, , at all times mentioned herein, Defendant LEVATOY, L.L.C. designated LEVCO SALES INC. 555 Kinderkamack Road, Oradell, New Jersey 07649 as its registered agent.

## THE FACTS

22. Plaintiff's parents purchased a toy You & Me Doll Stroller (the "Stroller") from the Defendants for Plaintiff's sister.

23. The fabric seat for the Stroller is kept in place by hooking each corner of the fabric seat onto protruding metal rods.

24. The fabric seat was not affixed to the protruding metal rods and easily separates and separated from the protruding metal rods. Two photographs of the stroller depicting, *inter alia*, the protruding metal rods are annexed as Exhibit "A."

25. The problem of fabric seat covers separating from the protruding metal rods was known to Defendants through testing and customer complaints and reviews of the product and similarly designed products sold, manufactured and distributed by Defendants.

26. You and Me is an exclusive-brand item for Toys "R" US.

27. Defendants sold, distributed and/or otherwise put the Stroller into the stream of commerce.

28. On May 12, 2010, Plaintiff fell upon the stroller whereupon a protruding metal rod pierced Plaintiff's right eye.

29. As a result of the trauma to Plaintiff's right eye, Plaintiff underwent several surgical procedures.

30. Plaintiff received a prosthesis to be placed on her right eye.

31. At the time the Stroller was purchased and on May 12, 2010, and subject to disclosure during this action, the Stroller was defective in at least one or more of, but not necessarily limited to, the following respects:

> a) the Stroller was equipped with protruding metal rods that could, impale, skewer and pierce a child's eyeball;

b) the Stroller was not equipped with covers on the protruding metal rods such that they could not have impaled, skewered and pierced a child's eyeball;

c) the failure to warn of the danger(s) associated with the protruding metal rods;

d) the fabric seat is not durable, tears easily and easily separates from the protruding metal rods;

e) the Stroller, as designed, was and is not reasonably safe because there was and remains a substantial likelihood of toddlers being injured by protruding metal rods.

f) available state of technology was not used in manufacturing the Stroller.

32. The Stroller, as designed, was and is not reasonably safe because there was, and remains, feasible alternative designs for the Stroller.

33. The protruding metal rods are not essential to the utility of the Stroller.

34. The protruding metal rods are not essential to the utility of the Stroller to the Plaintiff or the individual user.

35. It is and was foreseeable that a toddler could trip, stumble or otherwise fall, land upon or otherwise come in contact with a toy stroller.

36. It is and was foreseeable that should a toddler trip, stumble, fall, land upon or otherwise come in contact with a toy stroller equipped with protruding metal rods, injuries could occur.

37. It is and was foreseeable that Plaintiff could trip, stumble, fall, land upon or otherwise come in contact with the Stroller's protruding metal rods thereby causing injury.

38. Defendants knew or should have known that the Stroller was and is intended to be placed in homes where young children may come in contact with the Stroller.

39. Upon information and belief, through prior lawsuits, reviews of You & Me products, complaints and notification by one or more of defendants to the Consumer Product

Safety Commission, defendants are aware of grievance eye injuries sustained by toddlers as a result of contact with toy strollers designed, distributed manufactured and placed in the stream of commerce by defendants.

40. Upon information and belief, through prior lawsuits, reviews of You & Me products, complaints and notification by one or more of defendants to the Consumer Product Safety Commission, defendants are aware that:

    a. "The fabric seat does come off the metal frame frequently…"

    b. "…, the fabric ripped fairly quickly."

    c. "The fabric is really not durable at all."

    d. "…fabric did not hold up a single day with light play."

    e. This stroller has a very flimsy cover on it. The bottom constantly comes off…."

    f. My only "complaint" is that the seats are only held up by the fabric sliding over a bar (like a pocket). The pocket is not deep and does not fit the width very well so it is constantly falling off.

    g. "This one lasted about 2 months before the strap holding the fabric broke off. So I sewed that back on, then the other side broke off. The fabric also slides off the bottom. My kids are constantly stopping to fix it or asking me to fix it, so they don't have much actual play time with it."

    h. The to [SIC] of the fabric is sewn on so poorly that lasted only a few days more. Less then a week after buying it, it was trash."

    i. "This stroller has a very flimsy cover on it. The bottom constantly comes off and the straps on the top broke within a couple weeks of having it."

41. Plaintiff could not reasonably contemplate the potential risk of injury posed by the design of the Stroller and the inherent danger of the Stroller.

42. Defendants represent in their Mission Statement that they have implemented "industry-leading product safety standards that meet federally mandated requirements."

43. Defendants represent in their Mission Statement that "one of the important parts of our mission as a company is to help parents keep their kids safe."

44. Defendants represent in their Mission Statement that they "require that each product that we purchase complies with all applicable state and federal laws, industry standards, codes and requirements."

45. Upon information and belief, defendants did not comply with all applicable state and federal laws, industry standards, codes and requirements.

46. Paragraph one of the Toys "R" US web site at: http://www.toysrusinc.com/safety/faq/" states that defendants follow "additional tough safety standards" for products sold in Toys "R" US stores.

47. Upon information and belief, with respect to the Stroller, defendants did not abide by the "additional tough safety standards" for products sold in Toys "R" US stores.

48. Paragraph two the Toys "R" US web site at: http://www.toysrusinc.com/safety/faq/ states that "vendors" are "accountable for meeting our strict safety standards.

49. Upon information and belief, with respect to the Stroller, defendants' vendors" were not accountable for meeting Toys "R" US strict safety standards."

50. Upon information and belief, with respect to the Stroller, defendants' vendors did not meet Toys "R" US strict safety standards.

51. The Toys "R" US web site at: http://www.toysrusinc.com/safety/faq/ states that "accredited laboratory(ies)" are used to test its toys.

52. Upon information and belief, the Stroller was not tested by an "accredited

laboratory."

53. Paragraph four at the Toys "R" US web site at: http://www.toysrusinc.com/safety/faq/ states that defendants follow a "very strict safety assurance program."

54. Upon information and belief, with respect to the Stroller, defendants did not follow the "very strict safety assurance program."

55. Paragraph four at the Toys "R" US web site at: http://www.toysrusinc.com/safety/faq/ states that its follows all "government and industry laws, codes and requirements."

56. Upon information and belief, with respect to the Stroller, defendants did not follow all "government and industry laws, codes and requirements."

57. Paragraph four at the Toys "R" US web site at: http://www.toysrusinc.com/safety/faq/ states that "[m]anufacturers have their products tested by an accredited laboratory before being shipped to Toys "R" US for a variety of potential safety concerns including lead, cadmium, small parts, sharp edges, flammability and other hazards."

58. Upon information and belief, with respect to the Stroller, it was not tested by an accredited laboratory before being shipped to Toys "R" US for a variety of potential safety concerns including lead, cadmium, small parts, sharp edges, flammability and other hazards.

59. Defendants failed to perform a risk analysis on the Stroller to identify hazards and risks including, but not limited to hazards and risks associated with foreseeable uses and misuses.

60. Defendants failed to perform an FMEA or FMECA.

61. Defendants failed to verify that the Stroller was not evaluated and/or tested with reference to any defects prior to placing it in the stream of commerce.

62. Defendants ignored the safety and welfare of E.M.M. by falsely conveying to the purchasers that the products in the Toys "R" US store would be safe for children and adults alike.

8

63. Defendants by virtue of their experience in selling and distributing children's toys are in much better position than Plaintiff to contemplate the risks associated with protruding metal rods on children's toys.

64. Defendants had an obligation to warn of the risks of injury associated with the use of the Stroller.

65. Defendants had an obligation to warn that the protruding metal rods on the Stroller could cause injuries to toddlers and other children.

66. Defendants failed to provide adequate notice or warning that the Stroller could cause injuries to toddlers and other children.

67. Defendants failed to provide adequate notice or warning that the protruding metal rods on the Stroller could cause injuries to toddlers and other children.

## FIRST CAUSE OF ACTION
## STRICT PRODUCTS LIABILITY

68. Plaintiff repeats and realleges the allegations contained in paragraphs "1" through "67."

69. By reason of the foregoing, Plaintiff sustained and will continue to sustain grievous injury, including permanent blindness in her right eye, extreme pain, loss of peripheral vision, loss and/or impairment of perception, monocular vision, lacking stereopsis, reduction in field of view, decreased visual acuity, impairment in orientation to space, a decline in coordination and spatial skills, weaker visual motor skills, weaker perception of form and color, weaker appreciation of the dynamic relationship with the body to the environment, difficulties in eye-hand coordination, clumsiness, increased danger to injury to the remaining eye, loss of depth perception, irritation from the use of a prosthetic eye, infections caused by use of a prosthetic eye, emotional distress, anxiety and has since incurred and will continue to incur medical,

rehabilitative and other expenses and will incur lost income and the loss of other benefits of future employment.

70.     Defendants are liable for injuries to the Plaintiff in an amount to be determined by a trier of fact, but not less than fifteen million dollars ($15,000,000.00).

71.     At all times herein relevant, Defendants knew of the dangers of the Stroller, but, in conscious disregard thereof, failed to remedy the defects and/or to warn of the danger, to provide a protective, warning or safety device so as to avoid such danger, and/or have the Stroller recalled.  Defendants thereby acted in a wanton, malicious, and/or reckless manner, with conscious indifference and utter disregard of its effect upon the safety of vulnerable toddlers, entitling Plaintiff to an award of punitive damages in a sum to be determined at trial, but not less than fifty million dollars ($50,000,000.00) to punish Defendants for their wanton, malicious, and/or reckless acts and to discourage Defendants, and others, from acting in a similar manner in the future.

72.     Plaintiff demands judgment over and against the Defendants on her First Cause of Action in an amount to be determined by a trier of fact, but not less than (a) fifteen million dollars ($15,000,000.00) in compensatory damages; and (b) fifty million dollars ($50,000,000.00) in punitive damages.

## SECOND CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

73.     Plaintiff repeats and realleges the allegations contained in paragraphs "1" through "72."

74.     The Stroller was not fit for the ordinary purposes for which such toy strollers are used.

75.     By reason of the foregoing, Plaintiff sustained and will continue to sustain

grievous injury, including permanent blindness in her right eye, extreme pain, loss of peripheral vision, loss and/or impairment of perception, monocular vision, lacking stereopsis, reduction in field of view, decreased visual acuity, impairment in orientation to space, a decline in coordination and spatial skills, weaker visual motor skills, weaker perception of form and color, weaker appreciation of the dynamic relationship with the body to the environment, difficulties in eye-hand coordination, clumsiness, increased danger to injury to the remaining eye, loss of depth perception, irritation from the use of a prosthetic eye, infections caused by use of a prosthetic eye, emotional distress, anxiety and has since incurred and will continue to incur medical, rehabilitative and other expenses and will incur lost income and the loss of other benefits of future employment.

76. Defendants are liable for injuries to the Plaintiff in an amount to be determined by a trier of fact, but not less than fifteen million dollars ($15,000,000.00).

77. At all times herein relevant, Defendants knew of the dangers of the Stroller. But, in conscious disregard thereof, failed to remedy the defects and/or to warn of the danger, to provide a protective warning or safety device so as to avoid such danger, and/or to have the Stroller recalled. Defendants thereby acted in a wanton, malicious, and/or reckless manner, with conscious indifference and utter disregard of its effect upon the safety of vulnerable toddlers, entitling Plaintiff to an award of punitive damages in a sum to be determined at trial, but not less than fifty million dollars ($50,000,000.00) to punish Defendants for their wanton, malicious, and/or reckless acts and to discourage Defendants, and others, from acting in a similar manner in the future.

78. Plaintiff demands judgment over and against the Defendants on her Second Cause of Action in an amount to be determined by a trier of fact, but not less than: (a) fifteen million

dollars ($15,000,000.00) in compensatory damages; and (b) fifty million dollars ($50,000,000.00) in punitive damages.

## THIRD CAUSE OF ACTION
## BREACH OF IMPLIED
## WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

79. Plaintiff repeats and realleges the allegations contained in paragraphs "1" through "78."

80. At all times mentioned herein, Defendants knew or had reason to know the Stroller would be used by children and/or toddlers.

81. At all times mentioned herein, there existed an implied warranty that the Stroller was fit for such purposes.

82. The Stroller, however, was not fit for such purposes.

83. Defendants breached the implied warranty of fitness for a particular purpose.

84. The Stroller was not fit for the particular purposes for which such Strollers are used.

85. By reason of the foregoing, Plaintiff sustained and will continue to sustain grievous injury, including permanent blindness in her right eye, extreme pain, loss of peripheral vision, loss and/or impairment of perception, monocular vision, lacking stereopsis, reduction in field of view, decreased visual acuity, impairment in orientation to space, a decline in coordination and spatial skills, weaker visual motor skills, weaker perception of form and color, weaker appreciation of the dynamic relationship with the body to the environment, difficulties in eye-hand coordination, clumsiness, increased danger to injury to the remaining eye, loss of depth perception, irritation from the use of a prosthetic eye, infections caused by use of a prosthetic eye, emotional distress, anxiety and has since incurred and will continue to incur medical,

rehabilitative and other expenses and will incur lost income and the loss of other benefits of future employment.

86. Defendants are liable for injuries to the Plaintiff in an amount to be determined by a trier of fact, but not less than fifteen million dollars ($15,000,000.00).

87. At all times herein relevant, Defendants knew of the dangers of the Stroller. But, in conscious disregard thereof, failed to remedy the defects and/or to warn of the danger, to provide a protective warning or safety device so as to avoid such danger, and/or to have the Stroller recalled. Defendants thereby acted in a wanton, malicious, and/or reckless manner, with conscious indifference and utter disregard of its effect upon the safety of vulnerable toddlers, entitling Plaintiff to an award of punitive damages in a sum to be determined at the trial, but not less than fifty million dollars ($50,000,000.00) to punish Defendants for their wanton, malicious, and/or reckless acts and to discourage Defendants, and others, from acting in a similar manner in the future.

88. Plaintiff demands judgment over and against the Defendants on her Third Cause of Action in an amount to be determined by a trier of fact, but not less than: (a) fifteen million dollars ($15,000,000.00) in compensatory damages; and (b) fifty million dollars ($50,000,000.00) in punitive damages.

### FOURTH CAUSE OF ACTION
### NEGLIGENCE

89. Plaintiff repeats and realleges the allegations contained in paragraphs "1" through "88."

90. Defendants' actions are unreasonable and negligent.

91. By reason of the foregoing, Plaintiff sustained and will continue to sustain grievous injury, including permanent blindness in her right eye, extreme pain, loss of peripheral

vision, loss and/or impairment of perception, monocular vision, lacking stereopsis, reduction in field of view, decreased visual acuity, impairment in orientation to space, a decline in coordination and spatial skills, weaker visual motor skills, weaker perception of form and color, weaker appreciation of the dynamic relationship with the body to the environment, difficulties in eye-hand coordination, clumsiness, increased danger to injury to the remaining eye, loss of depth perception, irritation from the use of a prosthetic eye, infections caused by use of a prosthetic eye, emotional distress, anxiety and has since incurred and will continue to incur medical, rehabilitative and other expenses and will incur lost income and the loss of other benefits of future employment.

92.  Defendants are liable for injuries to the Plaintiff in an amount to be determined by a trier of fact, but not less than fifteen million dollars ($15,000,000.00).

93.  At all times herein relevant, Defendants knew of the dangers of the Stroller. But, in conscious disregard thereof, failed to remedy the defects and/or to warn of the danger, to provide a protective warning or safety device so as to avoid such danger, and/or to have the Stroller recalled. Defendants thereby acted in a wanton, malicious, and/or reckless manner, with conscious indifference and utter disregard of its effect upon the safety of vulnerable toddlers, entitling Plaintiff to an award of punitive damages in a sum to be determined at trial, but not less than fifty million dollars ($50,000,000.00) to punish Defendants for their wanton, malicious, and/or reckless acts and to discourage Defendants, and others, from acting in a similar manner in the future.

94.  Plaintiff demands judgment over and against the Defendants on her fourth cause of action in an amount to be determined by a trier of fact, but not less than: (a) fifteen million dollars ($15,000,000.00) in compensatory damages; and (b) fifty million dollars

($50,000,000.00) in punitive damages.

    **WHEREFORE**, Plaintiff demands judgment awarding the following relief:

a) A Judgment on Plaintiff's First Cause of Action in an amount to be determined by a trier of fact, but not less than: (i) fifteen million dollars ($15,000,000.00) in compensatory damages; and (ii) fifty million dollars ($50,000,000.00) in punitive damages;

b) A Judgment on Plaintiff's Second Cause of Action in an amount to be determined by a trier of fact, but not less than: (i) fifteen million dollars ($15,000,000.00) in compensatory damages; and (ii) fifty million dollars ($50,000,000.00) in punitive damages;

c) A Judgment on Plaintiff's Third Cause of Action in an amount to be determined by a trier of fact, but not less than: (i) fifteen million dollars ($15,000,000.00) in compensatory damages; and (ii) fifty million dollars ($50,000,000.00) in punitive damages;

d) A Judgment on Plaintiff's Fourth Cause of Action in an amount to be determined by a trier of fact, but not less than: (i) fifteen million dollars ($15,000,000.00) in compensatory damages; and (ii) fifty million dollars ($50,000,000.00) in punitive damages; and

e) Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury.

Dated: New York, New York
       February 4, 2014

                      Respectfully submitted,

                      SARETSKY KATZ DRANOFF & GLASS, L.L.P.
                      Attorneys for Plaintiff

                      By: _____
                              Eric Dranoff (ED-7892)
                      A Member of the Firm
                      *Office and P.O. Address:*
                      475 Park Avenue South, 26th floor
                      New York, New York 10016
                      (212) 973-9797; edranoff@skdglaw.com